IN THE UNITED STATES DISTRICT
COURT FOR THE NORTHERN DISTRICT
OF TEXAS DALLAS DIVISION

| | |
|---|---|
| DEEPROCK VENTURE PARTNERS LP, § § | |
| Appellant, § § | |
| v. § § | No. 3:16-cv-1552-M |
| GARY M. BEACH, et al., § § § | |
| Appellees. § § | |

## MEMORANDUM OPINION AND ORDER

Before the Court is Appellant DeepRock Venture Partners, L.P.'s ("DeepRock") appeal of the bankruptcy court's grant of the Trustee's Motion to Approve Settlement of Adversary Proceedings [ECF No. 1]. DeepRock filed its Brief on October 7, 2016 [ECF No. 17]. Gentry Beach, individually and as co-trustee of the Beach 2010 Trust, and Diane G. Reed, Chapter 7 Trustee of the estate of Gary M. Beach ("Debtor"), filed Appellees' Briefs on December 14, 2016 [ECF Nos. 21, 23]. For the reasons stated below, the decision of the bankruptcy court is **AFFIRMED**.

1. **Factual and Procedural Background**[1]

This bankruptcy appeal arises from an adversary proceeding filed on December 2, 2011, by the Chapter 7 Trustee, Diane G. Reed, and DeepRock, in the bankruptcy case of Debtor Gary M. Beach (the "Adversary Proceeding"). The Amended Complaint in the Adversary Proceeding alleges that Debtor Gary Beach and his son, Gentry Beach, fraudulently transferred assets from a family trust (the "1991 Trust") to shield those assets from the Debtor's creditors in bankruptcy.

---

[1] Unless otherwise noted, background information is taken from the Amended Complaint filed in the Adversary Proceeding. R. 1853–98.

Debtor initially filed for bankruptcy in December of 2011. DeepRock was and currently is the primary creditor in Debtor's bankruptcy; according to the Trustee, DeepRock's liquidated claim against the Debtor represents over 93% of the allowed unsecured claims in this case. R. 390. DeepRock's claims in the bankruptcy stem from a partnership agreement between Debtor and DeepRock. In 2005, prior to bankruptcy, DeepRock and Debtor had entered into a partnership, Playa Oil & Gas, LP ("Playa"), to drill for oil on properties supposedly controlled by Debtor and his son, Gentry Beach. DeepRock provided millions of dollars in capital to Playa and Debtor served as Playa's CEO and managed the partnership. Playa's drilling activities were largely unprofitable, and in 2008, Debtor filed suit against DeepRock, seeking to take control of Playa's remaining assets. DeepRock counterclaimed. In February 2011, a jury rendered a verdict against Debtor on all of his claims, and damages on DeepRock's counterclaims against Debtor and Debtor's company, Beach Capital, for breach of fiduciary duty and breach of contract. Judgment in the Playa litigation was entered on August 29, 2011.

Trustee and DeepRock allege that before and during the Playa litigation, Debtor and Gentry Beach, took "steps to liquidate the assets of a management trust established by Debtor's father and stepmother, Tommie Beach and Jenny Beach, to dispossess other family members of their rights under the trust, and . . . to ensure that the Debtor's creditors could not pursue his interest in trust assets." R. 1857. The management trust in question, the 1991 Trust, provided that upon the first to die of Tommie and Jenny Beach, the survivor would become the sole trustee, with Gentry Beach and Jenny Beach's niece serving as successor co-trustees. After Jenny Beach died in 2010, Debtor and Gentry Beach allegedly took advantage of Tommie Beach's dementia and mental incapacity to fraudulently gain access to assets of the 1991 Trust, then containing $1.72 million, to have a new will executed for Tommie Beach that removed

Jenny Beach's relatives as beneficiaries of 1991 Trust, to have warranty deeds allegedly executed by Tommie Beach that transferred property to the 1991 Trust and Debtor, and to liquidate securities held in the 1991 Trust.  In September of 2010, while suffering from profound dementia, Tommie Beach purportedly created the 2010 Trust for the benefit of Debtor and Gentry Beach.  The beneficial owners and trustees of the 2010 Trust are Debtor, who owns a 55% interest in the 2010 Trust, and Gentry Beach, who owns a 45% interest.  Unlike the 1991 Trust, the 2010 Trust documents contain a spendthrift provision that protects Debtor's interest in the 2010 Trust from creditors.  Assets from the 1991 Trust were then transferred into the 2010 Trust for the Debtor's and Gentry Beach's benefit.  Debtor allegedly spent funds from the 2010 Trust and Gentry Beach received distributions from trust assets in a claimed violation of the 2010 Trust document, which he then transferred back to Debtor.  Trustee and DeepRock claimed that the Debtor forged Tommie Beach's signature to create and fund the 2010 Trust, and maintain that the 2010 Trust was self-settled and merely an alter ego of the Debtor, and that assets of the 2010 Trust are thus not protected by the spendthrift provision.

     The Amended Complaint further asserts that after receiving an adverse judgment in the Playa litigation, Debtor created a Nevada limited liability company, Beach Petroleum LLC, which is owned by the 2010 Trust.  The Amended Complaint alleges that Debtor received thousands of dollars of payments from Beach Petroleum, and Black Horse Resources, LLC, although Beach Petroleum was not engaging in any actual business.  In April 2011, Beach Petroleum entered into an agreement (the "Participation Agreement") with Black Horse Resources, which was managed by Debtor's brother-in-law. R. 1458–61.  Under the Participation Agreement, Black Horse agreed to pay all land, lease, geophysical, seismic, drilling, completion, production, and operating costs of all activities relating to a plot of land in

Louisiana, subject to receiving 100% of the net revenue attributable to all oil, gas, and mineral production on the land, until Black Horse recouped its costs. R. 1458–59. The Participation Agreement provided for a monthly $15,000 payment to the 2010 Trust as compensation for services provided by Debtor. R. 1459. In September 2014, the Participation Agreement was amended to delete the $15,000 fee, in exchange for Beach Petroleum receiving Black Horse's interest in Pecos Permian Partners, LLC, which were subsequently sold for $375,000 and the proceeds deposited in the 2010 Trust. R. 1541; 1208–09.

Around August 19, 2015, the Participation Agreement was terminated and Beach Petroleum entered into an agreement with Black Horse and TP Panther Dome, LLC (the "2015 Agreement"). R. 1766–93. Under the 2015 Agreement, in exchange for $175,000 paid to Beach Petroleum, TP Panther Dome had the choice to select one of three options for future oil and gas production activities, one of which was an option to not engage in production. R. 1771–73. Separately, TP Panther Dome assigned a 1.75% overriding royalty interest to Beach Petroleum. R. 1795.

In October 2011, Debtor and Gentry Beach, in their capacities as trustees of the 2010 Trust, distributed the entire balance of the trust account, $928,223.83, to a Texas real estate escrow company. Just days before filing for bankruptcy, Debtor and Gentry Beach purchased, in cash, a home in Dallas, using $867,500 of the escrowed funds. On December 2, 2011, one business day before a contempt hearing in the Playa litigation on Debtor's failure to satisfy the judgment in favor of DeepRock, Debtor filed for bankruptcy protection.

On April 20, 2015, the Trustee and DeepRock filed the Amended Complaint in the Adversary Proceeding, primarily seeking to avoid and recover the value of all fraudulent transfers by the Debtor of assets transferred from the 1991 Trust to the 2010 Trust, and certain

transfers to Gentry Beach from the 1991 Trust and the 2010 Trust. The Trustee and DeepRock also sought other remedies associated with recovery of the fraudulent transfers, including costs, the imposition of a constructive trust on certain assets of the 2010 Trust, and a declaratory judgment that the 2010 Trust was settled by the Debtor and Gentry Beach themselves, and not by Tommie Beach, that the 1991 Trust and the 2010 Trust are alter egos of the Debtor, and that the Debtor's bankruptcy estate includes the Debtor's interest in all assets that presently make up the corpus of the 2010 Trust.

On December 21, 2015, the parties attended mediation pursuant to the bankruptcy court's order. R. 56–57; 1176–78; 3159. No agreement was reached at mediation, but in additional conversations after DeepRock's representatives left, the Trustee, Gary Beach, and Gentry Beach, reached an agreement to settle the Adversary Proceeding. R. 998–99; 1177–78; 1754–55. An initial term sheet was drawn up that same evening, which was further refined and incorporated into a Settlement Agreement dated January 19, 2016. R. 1754–55; 392–408. Among other things, the Settlement Agreement provided that in exchange for mutual releases between the Trustee and Defendants and dismissal of the Adversary Proceeding with prejudice, Defendants would pay the Trustee $1,000,000.00 in cash, Debtor would waive his discharge in bankruptcy pursuant to 11 U.S.C. § 722(a)(11), without any admissions of fault or wrongdoing, and Defendants would provide information to the Trustee regarding the whereabouts of certain assets and financial information of Beach Capital, Beach Petroleum, and another family trust. R. 392–408. The Settlement Agreement further provided that should the Trustee find that the 2010 Trust's interest in Beach Petroleum have more than nominal value, the parties would engage in good faith discussions as to how to distribute that value.[2] R. 395. After reviewing

---

[2] Specifically, the Settlement Agreement provided:
   Defendants shall provide to the Trustee with respect to Beach Petroleum LLC ("Beach Petroleum"),

5

Beach Petroleum's operations and financial condition, the Trustee concluded that due to depressed oil prices, the lack of ongoing operations or income by Beach Petroleum, and its inability to explore efficiently due to the cost of exploration, Beach Petroleum lacked value apart from what was in Beach Petroleum's bank account, which was $21,000. R. 1005–08. Following additional negotiations between the Trustee and Defendants, an additional settlement payment of $15,000 was agreed to be added to the $1,000,000.00 payment as a fair allocation for the current value of Beach Petroleum. R. 1008. On February 11, 2016, an Addendum to the Settlement Agreement was executed, amending the Settlement Agreement to reflect that Defendants' total payment to the Trustee would be $1,015,000.00, to be paid from the proceeds of the house purchased pre-bankruptcy by Defendants with proceeds of the 2010 Trust. R. 405–08.

On February 11, 2016, the Trustee filed the Motion to Approve Settlement of Adversary Proceeding (the "Settlement Motion"). R. 383. On March 30, 2016, DeepRock objected to the Settlement Motion. R. 414. The bankruptcy court held hearings on the Settlement Motion on May 12 and May 24, 2016. Both Gentry Beach and the Trustee testified in support of the Settlement Motion. R. 995–1065; 1085–1263. At the end of the hearing on May 24, 2016, the bankruptcy court informed the parties that she would issue a bench ruling on the Settlement Motion the following day. R. 1327.

On May 25, 2016, just before the bankruptcy court issued its bench ruling, counsel for

---

historical bank statements, tax returns and other information regarding financial transactions from the time of formation of Beach Petroleum through the date of this Settlement Agreement. If the Trustee determines that the Beach Trust's interest in Beach Petroleum is of nominal or minimal value, then such interest shall be transferred to Gentry Beach. If the Trustee determines that the Beach Trust's interest in Beach Petroleum has more than nominal or minimal value, then the Parties shall have good faith discourses as to said value and how to distribute same.
R. 395.

DeepRock informed the bankruptcy court that DeepRock had made an offer to purchase from the Trustee the Trustee's claim in the Adversary Proceeding for $275,000.[3] R. 1333. DeepRock's counsel asked the bankruptcy court to defer issuing its bench ruling on the Settlement Motion to let the Trustee consider DeepRock's offer. R. 1333. The bankruptcy court declined DeepRock's late request, overruled DeepRock's objection to the proposed settlement, and granted the Settlement Motion. R. 1335–38. The bankruptcy court invited DeepRock to later submit a motion on its effort to purchase the Trustee's claim from the Trustee, but it never did so. DeepRock appeals.

### 2. Basis of Appellate Jurisdiction

This Court has jurisdiction to hear this appeal under 28 U.S.C. § 158. The bankruptcy court's Order granting the Trustee's Motion to Approve Settlement of Adversary Proceedings qualifies as a "final order" from which the district court can hear an appeal. "[A]n order which ends a discrete judicial unit in the larger case concludes a bankruptcy proceeding and is a final judgment . . . ." *England v. FDIC*, 975 F.2d 1168, 1171 (5th Cir. 1992). "Finality in bankruptcy cases is contingent upon the conclusion of an adversarial proceeding within the bankruptcy case, rather than the conclusion of the entire litigation." *Id.*

---

[3] DeepRock's attorney raised the offer orally during the hearing before the bankruptcy court:
> MR. O'BRIEN: [O]n the trip home last night, . . . I took into account the events of yesterday and Your Court's points, and all of these things, and I discussed them with my client. And this morning, we communicated to [Trustee's counsel] Mr. Elmquist a bid on behalf of DeepRock the material terms of which . . . [is] a cash bid in an amount that would exceed the payout to both the trustee and the other two creditors under the existing proposal. So under the existing proposal, Mr. Beach pays a million and fifteen thousand, and seven sixty-five essentially goes to DeepRock. I had discussed with Mr. Elmquist before, and he had indicated that the trustee would recommend a bid where DeepRock was essentially given a setoff in that amount so long as the net amount was larger than the difference between DeepRock's seven sixty-five and a million fifteen. That number is $250,000. And so this morning, we bid and gave to the trustee that we would pay cash $275,000.

R. 1332–33.

### 3. Legal Standard

#### a. Standard of Review

This Court applies the same general standard of review that the Fifth Circuit applies in reviewing a bankruptcy court's findings of fact and conclusions of law. *In re SI Restructuring, Inc.*, 542 F.3d 131, 134 (5th Cir. 2008). Under this standard, "a bankruptcy court's findings of fact are reviewed for clear error, and its conclusions of law are reviewed de novo." *Id.* This Court "may affirm for any reason supported by the record, even if not [explicitly] relied on by the [bankruptcy] court." *United States v. Gonzalez*, 592 F.3d 675, 681 (5th Cir. 2009).

A bankruptcy court's "findings of fact, whether based on oral or documentary evidence, shall not be set aside unless clearly erroneous." Fed. R. Bankr. P. 8013. A finding is clearly erroneous and reversible only if, based on the entire evidence, the reviewing court is left "with the definite and firm conviction that a mistake has been made." *In re Dennis*, 330 F.3d 696, 701 (5th Cir. 2003) (citation omitted). When reviewing a bankruptcy court's approval of a compromise settlement, an appellate court reviews for abuse of discretion. *In re Bodenheimer, Jones, Szwak, & Winchell LLP*, 592 F.3d 664, 668 (5th Cir. 2009). A bankruptcy court does not abuse its discretion unless its ruling is based on an erroneous review of the law or on a clearly erroneous assessment of the evidence." *In re Yorkshire, LLC*, 540 F.3d 328, 331 (5th Cir. 2008) (quoting *Chaves v. M/V Medina Star*, 47 F.3d 153, 156 (5th Cir. 1995)).

#### b. Settlement

A bankruptcy court may approve a compromise or settlement on motion by the trustee, after notice and a hearing pursuant to Bankruptcy Rule 9019(a). Fed. R. Bankr. P. 9019(a); *In re Age Refining, Inc.*, 801 F.3d 530, 540 (5th Cir. 2015); *Con. Gen. Life Ins. Co. v. United Cos. Fin. Corp.* (*In re Foster Mortgage Corp.*), 68 F.3d 914, 917 (5th Cir. 1995). For a bankruptcy

court to approve a settlement agreement, it must be "fair and equitable and in the best interest of the estate." *In re Foster Mortgage Corp.*, 68 F.3d at 917.

In the Fifth Circuit, to determine whether a settlement is fair and equitable, the bankruptcy court must apply the three-part test set out in *In re Jackson Brewing Co.*, 624 F.2d 599, 609 (5th Cir. 1980), with a focus on comparing "the terms of the compromise with the likely rewards of litigation." *Id.* at 602. The bankruptcy court must evaluate: (1) the probability of success in litigating the claim subject to settlement, with due consideration for the uncertainty in fact and law; (2) the complexity and likely duration of litigation and any attendant expense, inconvenience, and delay; and (3) all other factors bearing on the wisdom of the compromise. *Id.* The "other factors" are known as the *Foster Mortgage* factors, and include (i) "the best interests of the creditors, 'with proper deference to their reasonable views'"; and (ii) "'the extent to which the settlement is truly the product of arms-length bargaining, and not of fraud or collusion.'" *In re Age Refining, Inc.*, 801 F.3d at 540 (quoting *In re Cajun Elec. Power Coop., Inc.*, 119 F.3d 349, 356 (5th Cir. 1997)); *In re Foster Mortgage Corp.*, 68 F.3d at 917–18.

### 4. Discussion

Here, the Court reviews the bankruptcy court's approval of the settlement agreement for abuse of discretion. *In re Bodenheimer*, 592 F.3d at 668. DeepRock argues on appeal that (1) the bankruptcy court erred in its assessment of the value of Beach Petroleum; (2) the bankruptcy court erroneously excluded evidence regarding oil and gas drilling results achieved by Beach Petroleum; (3) the Settlement Agreement disposes of the bankruptcy estate by transferring all assets remaining after settlement to Gentry Beach; (4) the bankruptcy court improperly rejected the views of DeepRock, the majority creditor, in approving the settlement; (5) the bankruptcy court improperly rejected DeepRock's offer to purchase the Trustee's claims in the Adversary

Proceeding; and (6) the bankruptcy court made improper assumptions regarding DeepRock's motives in objecting to the Settlement Agreement.

### a. The Bankruptcy Court Did Not Abuse Its Discretion in Approving the Settlement Agreement

In her ruling, Judge Jernigan noted that although the preponderance of the evidence standard applied, she found that the evidence "was clear and convincing that [the Settlement Agreement] is a fair, equitable, and reasonable settlement that is in the best interest of creditors." R. 1339. This Court finds that the bankruptcy court's approval of the Settlement Motion is supported by the record, which clearly establishes that the bankruptcy court considered the three-part test for approving a motion to compromise as set out in *Jackson Brewing*.

#### i. Probability of Success in Litigation

As to *Jackson Brewing*'s first factor, Judge Jernigan evaluated the probability of success in litigating the claim subject to settlement, stating that she "believe[d] the evidence was that there is a high degree of probability of success on the trustee getting exactly what she negotiated for, but a high degree of uncertainty that she would get one dime more." R. 1347. In making this assessment, Judge Jernigan considered how the Trustee calculated the $1,015,000.00 payment in the Settlement Agreement. R. 1343–44. The bankruptcy court agreed with the Trustee's assessment that punitive damages would be hard to prove by clear and convincing evidence, which would be the standard applied. R. 1347. Judge Jernigan noted that standing and estoppel arguments had been asserted to dismiss the litigation, which, if successfully, would lead to dismissal of the litigation, and highlighted the complexity of the case, noting that the lengthy timeline and numerous factual allegations made it "somewhat uncertain whether any fraud took place on the debtor's creditors." R. 1340; 1342.

The Court finds that the bankruptcy court did not abuse its discretion in assessing the

likelihood of success in litigation. In considering this first factor, "it is unnecessary to conduct a mini-trial to determine the probable outcome of any claims waived in the settlement." *In re Cajun Elec. Power Co-op., Inc.*, 119 F.3d 349, 356 (5th Cir. 1997). The judge need only apprise herself "of the relevant facts and law so that [she] can make an informed and intelligent decision." *Id.* (internal quotation marks omitted) (quoting *La Salle Nat'l Bank v. Holland* (*In re Am. Reserve Corp.*), 841 F.2d 159, 163 (7th Cir. 1987)). Judge Jernigan's findings on the first factor are supported by the record, which reflects that in bringing the Adversary Proceeding, the Trustee sought "everything that Gary Beach was entitled to under the terms of the 1991 trust had those assets never been transferred from that trust," but not "to recover any part of the trust that Gentry Beach had a legal right to." R. 3263; 945–47. Evidence in the record presented by the Trustee indicated that $1.702 million was transferred from the 1991 Trust to the 2010 Trust. R. 1752. Under the terms of the 1991 Trust trustee agreement, Debtor was entitled to the lesser of $250,000 or 26.1% of the trust corpus, plus 55% of the remainder. R. 1752. The Trustee calculated that Gary Beach would have been entitled to $658,100 under the terms of the 1991 Trust had those assets not been transferred. R. 1752–53. The record further indicates that the settlement amount of $1,015,000.00 closely approximates the full amount of actual damages—$658,100—the Trustee hoped to recover at trial, plus an additional $340,000 in attorneys' fees. R. 660; 947–956.

Concerning the value of Beach Petroleum, the Settlement Agreement provided that Defendants would provide information regarding Beach Petroleum, and "[i]f the Trustee determines that the [2010 Trust's] interest in Beach Petroleum has more than nominal or minimal value, then the Parties [to the Settlement Agreement] shall have good faith discussions as to said value and how to distribute same." R. 395. The Trustee testified that she determined that Beach

11

Petroleum had more than minimal value, but only with respect to the $21,000 balance in Beach Petroleum's bank account, from which she negotiated $15,000.00 to be added to the settlement amount. R. 1005–08. In reviewing the Settlement Agreement, the bankruptcy court acknowledged that although Beach Petroleum had earned approximately several hundred thousand dollars between 2011 and 2015, the evidence before the bankruptcy court indicated that the Beach Petroleum properties currently "have speculative value, especially during this current environment of depressed energy prices and low production of property." R. 1344.

DeepRock argues that the bankruptcy court erred by accepting the Trustee's valuation of Beach Petroleum, and that the real value is substantially higher than the $15,000 provided for in the Settlement Agreement and Addendum. However, the Court concludes that the bankruptcy court did not abuse its discretion in its assessment of the value of Beach Petroleum in the context of the fairness of the Settlement Agreement, and that Judge Jernigan properly apprised herself of the relevant facts and law to make an informed and intelligent decision regarding the Trustee's valuation of Beach Petroleum. *In re Cajun Elec.*, 119 F.3d at 356.

DeepRock argues that the bankruptcy court lacked competent evidence to evaluate the value of Beach Petroleum, and that in making this determination the bankruptcy court improperly excluded evidence related to the value of Beach Petroleum. DeepRock claims that the bankruptcy court abused its discretion by approving the Settlement Motion based upon the "insufficient evidence" before it. ECF No. 17 at 46. DeepRock argues that, under the terms of the Settlement Agreement, Gentry Beach stands to benefit from Beach Petroleum being undervalued and, therefore, he is a biased witness. *Id.* at 42–43. DeepRock further maintains that "nothing in the Trustee's conduct reflects a reasonable effort to ascertain the true value of assets of the estate," and that the Trustee "took no steps to ascertain the true value of the

business." *Id.* at 41–42.

On appeal, the Court gives deference to the bankruptcy court's first-hand determinations of witness credibility, and does not weigh evidence anew. *In re Perry*, 345 F.3d 303, 309 (5th Cir. 2003). There was sufficient evidence from which the bankruptcy court could conclude that, other than the $21,000 account balance, Beach Petroleum had minimal or nominal value. Both the Trustee and Gentry Beach testified to the value of Beach Petroleum. Gentry Beach testified that Beach Petroleum's interest in oil and gas properties had only nominal value. R. 1194; 1197–98. Specifically, he stated that the overriding royalty interest assigned to Beach Petroleum from TP Panther Dome was on "raw acreage" and that he did not believe they had received any royalty payments. R. 1184. On questioning by the bankruptcy court, Gentry Beach stated that "nothing has been paid out" on the overriding royalty interest, and that it was not foreseeable that any wells would be drilled. R. 1258–59. He further testified that, as to the 2015 Agreement with TP Panther Dome and Black Horse, there was "almost no activity" in the Gulf Coast due to operating costs, "[t]here is no production history from them at all," and "[t]here's no wells being drilled there." R. 1261–62. The Trustee testified that based on her review of the facts and documents, no meaningful revenues were being produced by Beach Petroleum properties. R. 1055. The Trustee further testified regarding the sale of Beach Petroleum's interest in Pecos Permian Partners, LLC, and her conclusion that $375,000 received in that sale had been spent on improving Debtor's house or spent by Debtor on living expenses. R. 1052. Bank statements for Beach Petroleum were admitted into evidence, including a statement showing a $21,000 account balance in December 2015, from which the Trustee negotiated for the additional $15,000 for settlement. R. 1353–1456.

The Court will not reweigh evidence that was before the bankruptcy court. The

bankruptcy court expressly acknowledged the possibility that the Trustee could have undervalued Beach Petroleum, but the bankruptcy court weighed the evidence in context and found it to be a credible estimate, and thus approved the Settlement Motion.[4]  This Court concludes that evidence in the record supports the bankruptcy court's findings, and therefore it will not set them aside.  *See In re Perry*, 345 F.3d at 309; *In re Inspirations Imports, Inc.*, No. 3:13-cv-4331, 2014 WL 1410243, at *2 (N.D. Tex. Apr. 3, 2014) ("The bankruptcy judge's 'unique perspective to evaluate the witnesses and to consider the entire context of the evidence must be respected.'" (quoting *In re Johnson Sw., Inc.*, 205 B.R. 823, 827 (N.D. Tex. 1997)).

DeepRock also argues that the bankruptcy court improperly excluded public record evidence concerning the value of wells associated with Beach Petroleum.  ECF No. 17 at 30.  In the Fifth Circuit, trial courts "are given broad discretion in rulings on the admissibility of evidence," and evidentiary rulings are reversed only when the court has "clearly abused this discretion and 'a substantial right of [a] party is affected.'"  *Weiser-Brown Operating Co. v. St. Paul Surplus Lines Ins. Co.*, 801 F.3d 512, 527 (5th Cir. 2015) (quoting *Rock v. Huffco Gas & Oil Co., Inc.*, 922 F.2d 272, 277 (5th Cir. 1991)).  At the hearing on the Settlement Motion, DeepRock's counsel sought to admit a printout of well reports from the State of Louisiana's website on the grounds that the printouts were public records.  R. 1119.  Counsel for Gentry Beach objected.  R. 1119.  The bankruptcy court sustained the objection on the grounds that the printouts were not authenticated.  R. 1119.  The Court is unconvinced that DeepRock has demonstrated that, even if that decision was erroneous, a substantial right was affected by the

---

[4] The bankruptcy court stated:
    The [T]rustee, true, does not have a formal valuation for Beach Petroleum. She has not studied laboriously.  But I think she and her counsel have looked at this enough to do more than a mere back-of-the-envelope guestimate here with regard to ranges of recovery for Beach Petroleum. They have, I think, seen that the bird in a hand is—of $1 million plus is likely a fair and equitable compromise when faced with years of expensive and uncertain litigation.
R. 1348.

14

exclusion of the evidence. The Trustee testified that she had not personally accessed her well reports from that website or performed that analysis. R. 1119–20. However, her testimony as that public state records were consulted by her staff and her counsel in evaluating Beach Petroleum's value.[5]

On review of the record, the Court concludes that the bankruptcy court did not abuse its discretion in finding the Proposed Settlement reasonable, considering the plethora of legal and factual issues which could impede success at trial and generate additional expense on appeal.

### ii. Complexity and Likely Duration and Expense of Litigation

Concerning the complexity, duration, and expense of litigation, Judge Jernigan concluded that, without settlement, the case would require a multi-week jury trial, considerable delay before it could be heard in the district court, and hundreds of thousands of dollars in attorney and expert witness fees. R. 1347. She also noted the Trustee's belief that "legal fees will be higher than the punitive damages which DeepRock wants, and higher than any potential value of Beach Petroleum given depressed prices, which is speculative." R. 1347. Judge Jernigan noted that the case had an "interesting" timeline, which made the litigation "extremely complex and very nuanced." R. 1340. Judge Jernigan's findings on the second factor are well-supported by the record, which confirms that this case is factually complex, involving activities spanning multiple years, numerous transfers between various accounts and trusts, and allegations of forgery and mental incapacity.

---

[5] The Trustee testified:
> [M]y counsel and the people in my office who have some ability to do reviews of State records, and oil and gas records, did, in fact, look into that to see whether there was any value in these properties. And we determined that these properties have only speculative value because they're not currently producing any revenue.

R. 1059

15

### iii. **Other Factors Bearing on the Wisdom of the Settlement**

The bankruptcy court also considered the third factor of the *Jackson Brewing* test, the so-called *Foster Mortgage* factors bearing on the wisdom of the settlement. As to whether the proposed settlement was the product of arm's length bargaining, and not of fraud and collusion, the bankruptcy court noted that the parties had "fought very hard," and had engaged in a full day of mediation before the Trustee and Defendants decided to settle. R. 1349.

Judge Jernigan also considered whether the proposed settlement was in the best interest of the creditors. The bankruptcy court must especially scrutinize a proposed settlement "when the settlement is between insiders and an overwhelming majority of creditors in interest oppose such settlement of claims." *In re Foster Mortgage*, 68 F.3d at 919. However, there is "no per se rule allowing a majority of creditors in interest to veto a settlement." *Id.*

Judge Jernigan recognized that DeepRock "hold[s] 92 or 93 percent of the unsecured creditor pool," but also noted that the creditors who did not object to settlement represent approximately $230,000 worth of claims.[6] R. 1348. DeepRock's opposition to the settlement, Judge Jernigan found, was unreasonable, stating that she did "not understand how any rational economically motivated creditor could oppose [the] settlement." R. 1349.

On appeal, DeepRock argues that the bankruptcy court improperly disregarded its views as the majority creditor and made improper assumptions regarding its motives in opposing the settlement. DeepRock argues that the Debtor mounted no defense in the Adversary Proceeding, that DeepRock will assume the costs of further prosecution of this Adversary Proceeding, that

---

[6] The bankruptcy court also noted that DeepRock had recently amended its proof of claim:
> DeepRock originally filed a proof of claim in this case in the amount of $822,713.20, plus known amounts, . . . on April 16th, 2012. DeepRock amended its proof of claim on May 9th, 2016, just three days before a hearing on this matter began, and now is asserting $2,508,699.82 as the amount the debtor owes to it.

R. 1336.

the Trustee failed to maximize the value of the estate, and that the structure of the Settlement Agreement unfairly prejudices DeepRock.

In considering whether to approve a motion to compromise, the bankruptcy court must consider the "paramount interest of creditors with proper deference to their reasonable views." *In re Foster Mortgage*, 68 F.3d at 917. A bankruptcy court should only approve a settlement when it is fair and equitable and in the best interests of the estate. *Id.* Here, the Court concludes that the bankruptcy court did not abuse its discretion in overruling DeepRock's objections and approving the Settlement Agreement. Apart from DeepRock's objections, the *Jackson Brewing* factors all support the bankruptcy court's approval of the settlement. DeepRock's views were taken into account by the bankruptcy court as one of the *Foster Mortgage* factors, as were the views of other creditors. R. 1348. The bankruptcy court noted the existence of these "other parties in interest who are looking at what appears to be a roughly 30 percent recovery after five years." R. 1348. Furthermore, there were compelling reasons in favor of settlement, including the Trustee's damages recovery plus attorney's fees, in addition to the Debtor waiving his discharge in bankruptcy, which the bankruptcy court noted, permits DeepRock to "otherwise pursue collection efforts on its claim or claims that remain unpaid after distribution in the bankruptcy case." R. 1345.

The bankruptcy court did not erroneously apply the law or erroneously assess the evidence in deciding to overrule DeepRock's objections to the Settlement Agreement, and therefore, the bankruptcy court did not abuse its discretion. *See In re Yorkshire*, 540 F.3d at 331.

DeepRock further argues that the bankruptcy court improperly rejected DeepRock's offer to purchase the Trustee's claims in the Adversary Proceeding. DeepRock claims that the

bankruptcy court's decision was legal error, and for support points to *In re Moore*, 608 F.3d 253 (5th Cir. 2010). *Moore* concerned a creditor who objected to a proposed settlement and had immediately made an offer to purchase the bankruptcy trustee's claims; in these circumstances, the Fifth Circuit held, the bankruptcy court should hold an auction to determine the true value of the claims. *Id.* at 265.

In denying DeepRock's request to defer from ruling until the Trustee had considered its $275,000 offer to buy the Trustee's claims in the Adversary Proceeding, Judge Jernigan expressed concern at the lateness of the offer, noting that the Settlement Motion had been pending for several months at the time she issued her ruling, the parties had attended two hearings on the Settlement Motion, and she had ordered the parties to provide briefing on whether the facts of *Moore* applied in this case. R. 1334. Judge Jernigan stated that she had "raised that issue" by ordering briefing on *Moore*, and "there was no bid"; accordingly, she proceeded to give her bench ruling approving the settlement. R. 1334. Judge Jernigan expressly stated any party could file post-hearing motions on DeepRock's offer, but the offer would not prevent her from issuing her ruling on the Settlement Motion. R. 1334–35. No party did so.

The Court concludes that DeepRock had ample opportunity to make an offer to the Trustee and the bankruptcy court did not commit legal error by denying its request to defer its ruling for such to be concluded. DeepRock's position is distinguishable from that in *Moore*. In *Moore*, the creditor first learned of the proposed settlement after the trustee moved for the bankruptcy court's approval, and "contacted the trustee and offered *immediately* to pay $50,000 for the claims." *In re Moore*, 608 F.3d at 257 (emphasis added). Here, DeepRock did not make an "offer" until several months after the Settlement Motion was filed and the settlement hearings concluded. Unlike in *Moore*, the terms of the offer presented to the bankruptcy court were not

detailed or formal. There is no written offer in the record. Having ordered briefing on *Moore*, the bankruptcy court effectively invited the parties to make timely bids so she would consider an auction, but DeepRock waited until moments before Judge Jernigan issued her ruling to describe an undocumented offer. The Fifth Circuit in *Moore* stated that a creditor's offer "obligated the bankruptcy court to consider whether an auction and § 363 sale were appropriate," but "'[w]hether to impose formal sale procedures is ultimately a matter of discretion' that we leave to bankruptcy courts." *Id.* at 265 (quoting *Goodwin v. Mickey Thompson Entm't Grp. Inc.*, 292 B.R. 415 (9th Cir. BAP 2003)). Here, Judge Jernigan exercised her discretion to prevent DeepRock's eleventh-hour potential offer from deferring her ruling on the Settlement Motion, and invited DeepRock to file a post-hearing motion on a purchase offer. DeepRock filed no such motion, and provides no reason for failing to do so.

### 5. Conclusion

For the foregoing reasons, the judgment of the bankruptcy court is **AFFIRMED.**

**SO ORDERED.**

April 4, 2017.

_____
**BARBARA M. G. LYNN**
**CHIEF JUDGE**